(Decided 28th January, 1887.)

ANNA M. H. CHAMBERLAIN and GEORGE ANNA MURPHY, by her husband and next friend, WILLIAM MURPHY *vs.* THE BALTIMORE AND OHIO RAILROAD COMPANY.

*Construction of Agreement—Measure of Damages.*

The plaintiffs conveyed land to a railroad company for a railroad; and the conveyance contained an agreement that the company should convey the water from a spring on the land by a pipe under the bed of said railroad to the south limit line thereof, so as to be accessible for watering the plaintiffs' stock on that part of their farm lying south of said railroad. In an action against the railroad company for a breach of said agreement, it was HELD:

1st. That if the spring mentioned in the deed was destroyed by quarrying for the construction of the railroad, but the water of that stream which filled the old spring or basin, was conducted in the manner contracted for to the plaintiffs' stock, although it was not brought from the particular spot where it collected in the old spring, the actual destruction of the old site of the spring, gave the plaintiffs no cause of action.

2nd. That the damages which the plaintiffs were entitled to recover for a breach of the agreement, were those sustained in not having water for the use of their stock, and not the difference in value between the farm with and without the spring.

Chamberlain, *et al. vs.* Balto. & Ohio R. R. Co.

APPEAL from the Circuit Court for Kent County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the five following prayers:

1. If the jury find that the plaintiffs were seized and possessed of a certain farm in Cecil County called "Richmond Hill," and being so seized and possessed, executed and delivered the deed offered in evidence, dated the 24th of November, 1883, conveying a portion of said farm to the defendant, and that the defendant accepted said deed and the land thereby conveyed, and took possession of the same and constructed its railroad thereon; and further find that there was a stipulation in said deed requiring the defendant to convey the water by pipes under the bed of said railroad from the spring at the foot of the hill, and on the land conveyed to defendant by said deed, to the south limit line of said railroad, so as to be accessible for watering stock on that part of plaintiffs' said farm lying south of said railroad; and further find that the defendant, its servants or agents, in building its said railroad, or procuring material to build the same, destroyed said spring, (as it existed on the land conveyed by said deed at the time of said conveyance, if the jury so find that,) then the plaintiffs are entitled to recover in this action.

2. If the jury under the preceding instruction shall find their verdict for the plaintiffs, then the damages are to be assessed upon the footing of a permanent injury to their estate, and once for all, so that they shall recover in this action whatever damages present or prospective they will sustain by reason of the breach upon the part of the defendant of the stipulation in the deed of November 24th, 1883, relating to the spring.

3. If the jury find a verdict for the plaintiffs under the first instruction, then the plaintiffs are entitled to damages

assessed upon the principle stated in plaintiffs' second prayer, and the jury have no right to take into consideration in assessing damages, the fact whether or not the defendant may have voluntarily supplied water to plaintiffs accessible for watering stock, on that part of plaintiffs' farm bordering on the south side of defendant's railroad, and adjoining the land conveyed to defendant by plaintiffs by said deed of November 24th, 1883, from sources other than the spring mentioned in the deed of November 24th, 1883.

4. If the jury find a verdict for plaintiffs under their first prayer, then the proper measure of damages is the difference in the value of that portion of plaintiffs' farm lying south of the railroad with the water of the spring therein mentioned, delivered at the foot of the hill by a pipe under the bed of said railroad to the south limit line of said railroad, so as to be accessible for watering stock on that part of plaintiffs' farm, and the value of said portion of their farm after said spring has been destroyed.

5. If the jury believe that the spring mentioned in the deed offered in evidence, supplied at the time said deed was executed, sufficient pure water for the use of the plaintiffs' stock, and shall further believe that the defendant has destroyed said spring and the stream which supplied the same, or should believe that the defendant has so permanently injured said spring and stream that the supply of water is and will hereafter be insufficient for the use of the plaintiffs' stock, or so impure as to be unfit for the use of said stock, and such impurity will be permanent and the plaintiffs are injured thereby, then the jury may give such damages as they shall believe the plaintiffs have sustained therefrom; and if the jury shall believe that said injuries, if any, are permanent, then the jury may give such prospective damages as the jury may believe the plaintiffs will sustain.

. The defendant offered six prayers, the second and fourth of which, are as follows:

Chamberlain, *et al. vs.* Balto. & Ohio R. R. Co.

2. If the jury find that the plaintiffs executed and delivered to the defendant the deed offered in evidence, and that the defendant subsequently entered into possession of the land thereby conveyed, and quarried stone thereon, which was used in the construction of their railroad over said lands, and that said quarry was opened and worked with no other purpose or intent than to utilize said stone in the construction of said railroad, and that said quarrying was done in the usual manner and with ordinary care, but resulted in the destruction of the spring mentioned in said deed; yet if the jury shall further find that the same stream or streams which supplied said spring, were, as the result of said quarrying, collected in a pool formed in said quarry at or near the site of said spring, and that defendant has conveyed said water from said pool by a pipe to the south limits of defendant's lines, in as ample supply, of equal purity and equally accessible to plaintiffs' stock as if conducted from said spring, then the plaintiffs are not entitled to recover for any damages by reason of the destruction of said spring after the time said pipe was laid and water supplied as stated.

4. If the jury find that the defendant has failed to convey the water from the spring mentioned in the deed to the south limit line of defendant's land, so as to be accessible to stock on the plaintiffs' land, then the damages which the plaintiffs are entitled to recover for this failure on the part of the defendant is the damage sustained by the plaintiffs in not having water for the use of their stock.

The Court (WICKES and STUMP, J.,) granted the plaintiffs' fifth prayer, and rejected their other prayers, and granted the second and fourth prayers of the defendant and rejected its other prayers. The plaintiffs excepted. The jury gave a verdict in favor of the plaintiffs for $266.25, and judgment was entered accordingly. The plaintiffs appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*H. Arthur Stump,* and *Albert Constable,* for the appellants.

*John K. Cowen,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The questions presented by this appeal, arise wholly upon the prayers granted and rejected at the time ; and they depend upon the true and proper construction of the agreement of the appellee, a railroad corporation, in a certain deed of the appellants to it.   The tenth count of the plaintiffs' declaration, the appellants contend, presents their cause of action.   It substantially charges that the appellants sold and conveyed a certain strip of land to the appellees for the purposes of their railroad, upon which was a certain spring of water at the foot of a certain hill, which spring, the appellants contend, the appellees engaged to preserve and maintain "as it existed at the time of the conveyance, so as to enable it to convey the water from said spring by a pipe under the bed of the said railroad, so as to be accessible for watering stock on that part of the appellants' farm lying south of the railroad and bordering thereon ;" and that the defendant (appellee) disregarding their agreement has opened a quarry "on the said land and on the site where said spring is located, and totally destroyed said spring, so that it is now and forever will be impossible to convey the water from the spring at the foot of the hill, by a pipe under the bed of said railroad to the south limit line of said railroad, so as to be accessible for watering stock on that part of the plaintiffs' farm, lying south of said railroad and bordering thereon, by reason of the total destruction of said spring."

The deed of the appellants to the appellee, was made on the 24th of November, 1883, and recites as follows :

Chamberlain, *et al. vs.* Balto. & Ohio R. R. Co.

" Whereas said party of the second part has located a rail-road upon and through a parcel of land, belonging to the said party of the first part, situated in the County of Cecil and State of Maryland; and whereas the said party of the second part has paid, and the said party of the first part has received the sum of fifteen hundred dollars ($1500) in full payment for all the estate, right, title, interest and property which the said party of the first part now has, or may hereafter have, in and to the said parcel of land, and in full satisfaction of all damages which the said party of the first part may sustain by reason of the location and construction of said railroad upon and through said land."

Then follows the granting clause, which describes a strip of land thirty-three feet wide on each side of the centre line of the railroad, and containing in gross ten acres and a fraction. The *habendum* clause, with covenants and agreements is as follows : " To have and to hold all and singular the said strip of land above described, with all the rights, liberties and privileges aforesaid, unto said company, its successors and assigns, to its and their own proper use and behoof forever; and the said party of the first part do further covenant, that in consideration of the premises, the said Baltimore and Ohio Railroad Company, its successors or assigns, or any other railroad company which it may own, control or manage, either through ownership of its stock or otherwise, shall have the right and privilege at all times of maintaining and operating a railroad upon and through the strip of land hereinbefore described ; and the said grantors covenant that they will warrant specially the land hereby conveyed and that they will execute such other and further assurances as may be requisite ; and said railroad company hereby agrees to construct and maintain a substantial fence on such strip of land herein conveyed, and also to construct and maintain for the use of said grantors, their heirs and assigns, a grade crossing at or near the point where the farm road crosses

said railroad; and said railroad company further agrees to convey the water from the spring at the foot of the hill, by a pipe under the bed of said railroad to the south limit line of said railroad, so as to be accessible for watering stock on that part of the farm lying south of said railroad."

The evidence in the case, offered by the appellants, tended to show, that the appellees, by quarrying for stone on their land, had sapped the sources of supply of water which, before the quarrying, and at the making of the deed, collected in the spring at the foot of the hill, or issued from the hill at that point, and had destroyed the former site of the spring; and that now, about ten feet higher than before, the water issues from crevices in the rocks and flows in a northeastern direction from the old site, and collects in a pond partly on the appellee's land, and partly on the land of Mr. Sharp; and that from this pool or pond the appellees have piped the water to the plaintiff's land and stock; but that, in the summer, the water has a green scum on it in the pond, and is unfit for the stock to drink, and is insufficient in quantity for the purpose; and less than in the old spring. The appellees' witnesses testified that the supply of water was from the same stream that filled the old spring, and is taken in pipes to the appellants' land and stock in abundant supply, and the quantity is greater than in the old spring; and that the water was quite as good as the old spring, and perfectly pure, and that the old site was destroyed by quarrying for stone, in the usual and proper manner for the purpose of getting stone for the construction of piers for the railroad's approach to the bridge. It was also in proof on the part of the defendant that the original plan of the road was for an embankment instead of piers, which embankment would have covered up the spring mentioned in the deed.

The appellants contend that the appellees were bound by their agreement to preserve the spring mentioned in

the deed intact, and as *it existed at the time of the deed's* execution, and have so alleged in their *narr.;* and their first prayer distinctly embodies that view.   The agreement of the deed is to convey " the water from the spring at the foot of the hill by a pipe under the bed of the railroad to the south limit line of said railroad," &c. It does not, in terms, say anything about preserving the spring exactly *as it existed*, but the appellants argue that the agreement cannot be performed without maintaining the continued existence of that spring in that spot, and that to take water from any other spot ·is not a compliance with their engagement.   The endeavor is to bring the case within the principle of the decision of the Court in *Stirling vs. Maitland, 5 Best & Smith,* 840–2.

The appellees insist that what the appellants were contending for was preservation of a water supply for their stock from the stream which created the basin at the foot of the hill, which is designated as a " spring at the foot of the hill," and that if that supply of water has not been cut off and destroyed, but is taken to the plaintiffs from another spot where the *same water* collects, they cannot be held to have destroyed the spring in the sense of the contract, and in violation of it.   If that be the true construction of the contract, the condition of things intended to be preserved has been preserved as was required in *Stirling vs. Maitland.*

Looking to the object of the railroad in buying the strip of land conveyed by the deed, and the use to be made of it; and also to the object appellants appear, by the deed, to have had in securing the agreement, we are all clearly of opinion that the construction of the contract contended for by the appellees, and given it by the Circuit Court, was right.   It was not the basin itself, but the water springing into it, its supply which was to be taken to plaintiffs' stock.   The lines of the land conveyed, not only included *it* within the thirty-three feet from the centre line on each

side, but in addition to that which the deed expressly defines as conveyed, in further description the deed adds "and in addition to said strip, as much more land as may be necessary for slopes in cuts and fills, allowing one foot horizontal to one foot vertical for slopes in cuts, and one foot and a half horizontal to one foot vertical for slopes in fills." Thus it appears from the very paper itself what was to be done on the land granted, and if done on that part where the spring was, which future need could only determine, would of necessity destroy the spring's site; though it would not prevent the saving of the water from the stream which supplied it, and diverting it by artificial channel and pipe as was agreed. That which the deed shows was possible and likely to be done where the spring was, the engineer witness of appellee, testifies was actually contemplated and the plan of the road required, viz., to fill up the spring. Because the building of the road would cut off the spring from the other part of the farm where the stock would be, it was necessary to get the water to them. Hence, it appears that it was not the spring in its then state which was to be preserved, but the water which issued into it. It was that water for the stock the appellants wanted taken to their stock, and which appellee engaged to give them by laying pipes under the railroad to the southern limit of the railroad's land, where it should be delivered for them. The necessities of the plaintiffs' stock was what plaintiffs were seeking provision for, and the necessities of the appellee's road in its process of construction was what appellee was providing for; and these together leave no doubt in our mind as to the true interpretation of the contract. Contracts will always be construed reasonably and in accordance with what the evidence shows the subject-matter to be, and the consequent object of the parties to it. The extent of the obligation may greatly vary according to such proof. *Anson on Contracts, 2nd Edition*, 243. The instrument itself shows what each party wanted and intended.

We think the Circuit Court was clearly right in rejecting the first prayer of the plaintiffs, for it presented an erroneous view of the obligation of the contract; and the second, third and fourth prayers depended so entirely on the first, and its theory of the duty of the appellee, (which the lower Court rejected, and we approve,) that we think they were also correctly refused.

The fifth prayer of the appellants was granted, and by it the jury were instructed that if they found "that the spring mentioned in the deed offered in evidence, supplied at the time said deed was executed sufficient pure water for the use of the plaintiffs' stock, and shall further believe that the defendant has destroyed said spring and the stream which supplied the same, or should believe that the defendant has so permanently injured said spring and stream that the supply of water is and will be hereafter insufficient for the use of the plaintiffs' stock, or so impure as to be unfit for the use of said stock; and such impurity will be permanent, and the plaintiffs are injured thereby, then the jury may give such damages as they shall believe the plaintiffs have sustained therefrom; and if the jury shall believe that said injuries (if any) are permanent, then the jury may give such prospective damages as the jury may believe the plaintiffs will sustain." By this instruction, asked and granted, the plaintiffs obtained all they were entitled to have, to say the least. Under a count for total destruction, they secured the instruction of the jury, that if they found that the spring and stream was wholly destroyed, or that the supply of water was diminished so as to be inadequate in quantity for plaintiffs' stock, or was rendered impure and unfit for them, they should find for the plaintiffs in any of the then contingencies, and might give damages for injuries already sustained, and also for such as would accrue. Upon which of the then contingencies the jury did find their verdict, we do not know, nor is it material that we should know. Having asked and obtained what they did, they cannot justly

complain of the Court's action in granting the defendants' second prayer, which only put the converse of their own proposition, stated in a little different form. It only asked the jury to be told that if the spring mentioned in the deed was destroyed by quarrying for the construction of the railroad, done in the usual manner, and with ordinary care, and was done with no other purpose, but that the water of the same stream which supplied the old spring collected in a pool elsewhere, and was conducted by a pipe to the south limits of the defendants' lines, in as ample quantity, in equal purity, and as accessible to plaintiffs' stock as if conveyed from the old spring, then the plaintiffs were not entitled to recover any damages after such pipe was laid, and the water was so conducted to the plaintiffs' land and stock. The theory of this prayer is, that if the water of that stream which filled the old spring or basin, was conducted, in the manner contracted for, to the plaintiffs' stock, although it was not brought from the particular spot, where it collected in the old spring, then the actual destruction of the old site of the spring gave no cause of action. We have already indicated this to be our construction of the meaning of the contract, and regarding the question at issue as wholly dependent upon the contract and its interpretation, we have not found it necessary to consider and discuss the authorities cited in support of the proposition that the appellees had the right to mine or quarry their land, and that if, in the fair and *bona fide* exercise of that right, without sinister motive, the appellants' spring was destroyed, it was *damnum absque injuria*. As we understand the object and meaning of that agreement that is not involved. So far as this second prayer of the defendants embraced the questions raised by the proof as to the quantity and purity of the water supplied from the new pool or spring, and its adequacy and fitness for the plaintiffs' stock, it simply follows the example of the plaintiffs' prayer on the same questions, and only seeks to put the converse result to the jury if they should not find

as the plaintiffs contended they must, on the proof; and we are unable to see any just ground of complaint because the instruction was granted. As to the special exception thereto for the want of evidence to support it, we need only say that the plaintiffs' fifth prayer assumes there was evidence on these subjects, and there certainly was; and if there was to sustain it, there was also to sustain the second of the appellee. There was evidence each way.

The fourth prayer of the appellee, as to the measure of damages which was granted, also forms part of appellants' complaint. It reads thus, "if the jury find, that the defendant has failed to convey the water from the spring mentioned in the deed to the south limit of defendant's land so as to be accessible to stock on the plaintiffs' land, then the damages which the plaintiffs are entitled to recover for this failure on the part of the defendant is the damage sustained by the plaintiffs in not having water for the use of their stock."

Upon the theory upon which the case was tried, this was certainly the measure of plaintiffs' damages. The needs of the stock seem to be the moving cause for the agreement as we read it; and that seems to be the view of the *narr.* Inadequate supply and unfitness for the stock are presented by the plaintiffs' fifth prayer as the question for the jury to pass upon, and the inquiry in that regard is what damages are asked for. Damages in that regard alone was to be considered, and therefore a prayer which asked as did the fourth of the plaintiffs, that the measure of damages was the difference in value between the farm with and without the spring was clearly erroneous; for it would include the value of the spring for any and all purposes as affecting the value of the farm, and would naturally mislead the jury. We find no ground for reversal and the judgment must be affirmed.

*Judgment affirmed.*

(Decided 28th January, 1887.)